UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Roger Liimatta,

        Plaintiff,

v.                                                     Civ. No. 03-5112 (JNE/RLE)
                                                      ORDER

V & H Truck, Inc. and Bell Equipment of
North America, Inc.,

        Defendants.

---

Robert J. Feigh, Esq., Gray, Plant, Mooty, Mooty & Bennett, P.A., on brief for Plaintiff Roger Liimatta.

Roger C. Justin, Esq., Rinke-Noonan, on brief for Defendant V & H Truck, Inc.

Michael J. Ford, Esq., and Melinda M. Sanders, Esq., Quinlivan & Hughes, P.A., on brief for Defendant Bell Equipment of North America, Inc.

---

      This is an action by a purchaser of logging equipment, Roger Liimatta, against the equipment's distributor, V & H Truck, Inc. (V & H), and the equipment's manufacturer, Bell Equipment of North America, Inc. (Bell), for fraud, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and breach of express warranties. The case is before the Court on V & H's Motion for Partial Summary Judgment and Bell's Motion for Summary Judgment. For the reasons set forth below, the Court grants in part and denies in part both motions.

### I.    BACKGROUND

      Bell manufactures logging machinery, including forwarders. A forwarder transports logs from the timberline to a staging area where the logs are loaded on a trailer and shipped out of the forest. In 1997, Bell and V & H entered into a Distribution Agreement. Under the agreement,

1

Bell appointed V & H as its exclusive distributor in Wisconsin and the "Upper Part of Michigan."

In the summer or early fall of 1999, Liimatta contacted V & H to find out what brand of timber processor it sold. Liimatta then went to V & H's facility in Prentice, Wisconsin, and spoke to Mark LaCombe, one of V & H's sales representatives. LaCombe and Liimatta visited several forests so that Liimatta could see the processors in operation. They also briefly discussed Bell timber forwarders. Later, LaCombe and Liimatta again discussed Bell forwarders. Liimatta ultimately decided to buy two Bell forwarders. Liimatta and LaCombe signed a Motor Vehicle Purchase Contract for one of the forwarders, identified as BAT 2553, on September 14, 1999. The contract describes it as a new Bell T12B forwarder. LaCombe signed a Motor Vehicle Purchase Contract for the other forwarder, identified as BAT 2447, on November 2, 1999. The contract describes it as a new Bell T12B forwarder. The Purchase Contracts incorporate the Bell Warranty.

Liimatta alleges that LaCombe made several misrepresentations to induce him to buy the forwarders. The alleged misrepresentations are: (1) "V & H was in the beginning stages of what was going to be an extended relationship with [Bell] to handle the sales and service of [Bell's] forestry products"; (2) the forwarders "were an indication of what was going to be [Bell's] considerable presence in the United States' forestry machine market"; (3) "V & H invited [Liimatta] to tour [its] service facility located in Wisconsin, and represented that the V & H employees were trained to promptly and properly service the machines in question, and would promptly and properly service the machines as needed"; (4) the forwarders "were identical, both 1998 models"; (5) the forwarders' "rear axle design with its gear was of superior design and function" to those of competitors; (6) the forwarders "were also superior to competitors

2

machines, in that they would be more easily and timely serviceable in the field"; (7) the forwarders "were essentially brand new, with BAT 2447 having approximately 653 hours of use, and BAT 2553 having approximately 230 hours of use, with all of the hours of use being pre-sale, demonstration hours"; and (8) Bell "was establishing a significant parts facility in the State of Georgia which would provide prompt and ready access to parts for servicing and repair of the machines."

Bell manufactured BAT 2447 in 1996. It is a T12B model. The next year, Bell sold BAT 2447 to a dealer that used the forwarder as a demonstrator. Bell later repurchased it from the dealer and then sold it to V & H. Bell manufactured BAT 2553 in 1997. It is a T12B MK II model. Bell sold it to V & H in 1998. Liimatta took possession of BAT 2553 and BAT 2447 in September 1999 and November 1999, respectively. After experiencing several problems with the forwarders and making several warranty claims, Liimatta brought this action.

## II.     DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must

look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     Bell's motion**

   *1.     Agency*

Bell asserts that it is entitled to summary judgment insofar as Liimatta seeks to hold Bell liable for V & H's alleged misconduct under an agency theory. According to Bell, its relationship with V& H was that of vendor and vendee, not of principal and agent. Liimatta asserts that V & H acted as Bell's agent or with apparent authority to act as Bell's agent.

Under Minnesota law,[1] "[a]gency is the fiduciary relationship that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *A. Gay Jenson Farms Co. v. Cargill, Inc.*, 309 N.W.2d 285, 290 (Minn. 1981); *see Minn. Forest Prods., Inc. v. Ligna Mach., Inc.*, 17 F. Supp. 2d 892, 913 (D. Minn. 1998). Where, as here, the case involves a party who sells another party's product, a court's determination of the existence of an agency relationship includes consideration of "whether the alleged agent acquires absolute ownership and title of the goods before selling them to a third party, and whether the alleged principal has control over where the alleged agent can sell the goods, to whom she can sell them, and for what price." *Ligna*, 17 F. Supp. 2d at 913-14.

Bell maintains that it had no right to control to whom, where, or for how much V & H sold Bell products. Robin Pett, Bell's General Manager, describes Bell's relationship with its distributors as follows:

---

[1]     The parties argue in terms of Minnesota law. The Court resolves the motions under the same. *See Wiser v. Wayne Farms*, 411 F.3d 923, 926-27 (8th Cir. 2005); *Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1224 (8th Cir. 1995); *OT Indus., Inc. v. OT-tehdas Oy Santasalo-Sohlberg AB*, 346 N.W.2d 162, 168 (Minn. Ct. App. 1984).

> Bell sells its machinery to distributors, like V & H, and then the distributors try to sell the machinery to their customers. Bell has no control over the machinery once it is sold to the distributor, meaning Bell has no right or interest to whom the machinery was sold or for how much it is sold, and similarly had no control over the terms or conditions upon which the machinery is sold. Bell also has no control over (or even knowledge of) what a distributor says to a distributor's customers.

In addition, the Distribution Agreement provides:

> The relationship between MANUFACTURER [Bell] (including MANUFACTURER'S affiliates) and DISTRIBUTOR [V & H] during the terms of this Agreement will be that of vendor and vendee. DISTRIBUTOR is in no way the legal representative or agent of MANUFACTURER or its affiliates for any purpose whatsoever and has no right or authority to assume or create in writing or otherwise any obligation of any kind, expressed or implied, on behalf of MANUFACTURER or its affiliates, it being intended that DISTRIBUTOR will be and remain an independent contractor.

In response, Liimatta cites *In re Insurance Agents' Licenses of Kane*, 473 N.W.2d 869 (Minn. Ct. App. 1991), for the proposition that "[a]n agency relationship may be established even though the parties did not call it an agency relationship and did not intend the legal consequences of such relationship." *Id*. at 873. He attempts to demonstrate the existence of an agency relationship based on the course of dealing between Bell and V & H. *See Vacura v. Haar's Equip., Inc.*, 364 N.W.2d 387, 391 (Minn. 1985). According to Liimatta, the course of dealing consists of: (1) the Distribution Agreement appointed V & H as Bell's exclusive distributor in Wisconsin and upper Michigan; (2) V & H sold equipment on consignment on Bell's behalf; and (3) Bell controlled pricing, permissible demonstration hours, and rental agreements under the consignment agreement.

As to Liimatta's first point, there is no evidence in the record to indicate that Bell limited V & H to sales in Wisconsin and upper Michigan. The Court notes that the Purchase Contracts list Liimatta's address in Minnesota. As to his second and third points, the record reveals that Bell sold the forwarders to V & H before Liimatta purchased them from V & H and that Bell did

5

not retain control over them after their sale. Even if Bell consigned equipment to V&H, the record reveals that V&H was not acting as Bell's agent when Liimatta purchased the forwarders because Bell did not control the sale from V&H to Liimatta. Viewing the record in the light most favorable to Liimatta, the Court concludes that V&H was not Bell's agent.

The same conclusion is warranted with regard to Liimatta's assertion that V&H acted with apparent authority. The Minnesota Court of Appeals summarized the law of apparent authority as follows:

> A principal is bound not only by an agent's actual authority but also by authority that the principal has apparently delegated to the agent. Apparent authority is authority a principal "holds an agent out as possessing, or knowingly permits an agent to assume." To find apparent authority, (1) "the principal must have held the agent out as having authority, or must have knowingly permitted the agent to act on its behalf," (2) third parties "must have had actual knowledge that the agent was held out by the principal as having such authority or had been permitted by the principal to act on its behalf," and (3) "proof of the agent's apparent authority must be found in the conduct of the principal, not the agent."

*Powell v. MVE Holdings, Inc.*, 626 N.W.2d 451, 457 (Minn. Ct. App. 2001) (citations omitted). In this case, there is no evidence in the record that Bell either held V&H out as possessing or permitted V&H to assume authority to bind Bell. The Court therefore rejects Liimatta's argument that V&H acted with apparent authority.

Having concluded that V&H was not Bell's agent, the Court grants Bell's motion insofar as Liimatta seeks to hold Bell liable for V&H's alleged misconduct. The Court turns to the claims Liimatta asserts directly against Bell.

 2. *Fraud*

Bell argues it is entitled to summary judgment on Liimatta's fraud claim because the alleged misrepresentations identified by Liimatta are not fraudulent. To prevail on a fraud claim, a plaintiff must demonstrate that the defendant:

> (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

*M.H. v. Caritas Family Servs.*, 488 N.W.2d 282, 289 (Minn. 1992). "A misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *Id*. A representation as to a future act does not necessarily provide the basis for a fraud claim:

> It is a well-settled rule that a representation or expectation as to future acts is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place. It is true that a misrepresentation of a present intention could amount to fraud. However, it must be made affirmatively to appear that the promisor had no intention to perform at the time the promise was made.

*Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974). A fraud claim cannot be based on predictions, opinions, or sales puffery. *See Dollar Travel Agency, Inc. v. Northwest Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn. Ct. App. 1984).

Of the eight alleged misrepresentations, the first, second, and eighth are not actionable because they are statements of future acts or predictions of future events. Nor are the fifth and sixth actionable because they are statements of opinion or sales puffery.

As to the remaining alleged misrepresentations, Bell argues that it is entitled to summary judgment because it did not make them to Liimatta. Under Minnesota law, liability for fraud does not necessarily depend on direct communication of a misrepresentation:

> The appellants relied heavily on the absence of direct contact between the respondents and themselves. They assert that all representations made to the respondents were made by an independent contractor, Flaby, and therefore can give rise to no liability on the appellants' part. To the contrary, however, the appellants in making the representations to Flaby knew and intended that Flaby would be passing on his information to potential investors. The appellants who

> had full knowledge of the incomplete and misleading nature of their representations cannot claim to be insulated from liability.

*Vikse v. Flaby*, 316 N.W.2d 276, 284 (Minn. 1982); *see Kronebusch v. MVBA Harvestore Sys.*, 488 N.W.2d 490, 496 (Minn. Ct. App. 1992); *see also* Restatement (Second) of Torts §533 (1977). Accordingly, the lack of direct communication between Bell and Liimatta does not necessarily shield Bell from liability for fraud. The Court turns to whether Bell made any of the potentially actionable misrepresentations to V & H.

With regard to the third alleged misrepresentation, Liimatta does not direct the Court to any evidence that Bell made the representation to V & H. The Court therefore concludes that Bell is entitled to summary judgment on Liimatta's fraud insofar as the claim is based on the third statement.

The fourth alleged misrepresentation contains two parts: (1) that the forwarders were "identical"; and (2) that the forwarders were "1998 models." Liimatta does not direct the Court to any evidence that indicates Bell represented to V & H that the forwarders purchased by Liimatta were identical. Invoices from Bell to V & H indicate that the forwarders are different models. Accordingly, Liimatta cannot maintain a fraud claim against Bell based on the representation that the forwarders were "identical."

As to the model year of the forwarders, it is undisputed that one forwarder was built in 1996 and the other in 1997. Drawing all reasonable inferences in Liimatta's favor, the deposition testimony of LaCombe, the V & H sales representative who handled Liimatta's purchase of the forwarders, could be read to state that Bell represented to V & H that the model year of the forwarders was 1998. There is evidence in the record to support the conclusion that the model year of a forwarder is the year when the forwarder was built. Viewing the record in the light most favorable to Liimatta, a reasonable trier of fact could conclude that Bell

8

fraudulently represented the forwarders to its distributor as 1998 models. Accordingly, Bell is not entitled to summary judgment on Liimatta's fraud claim insofar as the claim is based on the representation that the forwarders were 1998 models.

Turning to the seventh alleged misrepresentation, it contains information about the condition of the forwarders and the hours of use. Liimatta has not directed the Court to any representation by Bell as to the forwarders' hours of use. As to the alleged representation that the forwarders were new, the Purchase Contracts executed by Liimatta and V & H describe the forwarders as new. LaCombe's deposition testimony indicates that Bell represented the forwarders were new. Assuming that Bell made the representation, the issue is whether it was fraudulent. With regard to BAT 2447, Bell acknowledges that it sold the forwarder to a third-party dealer in 1997, repurchased it, and later sold it to V & H. In addition, Bell described BAT 2447 as "used" in a fax dated October 1999. As to BAT 2553, V & H submitted a warranty claim to Bell in February 1999. The warranty claims lists 789 service hours to date. The Distribution Agreement states that "[a]ny Product with 500 hours or more on that Products OEM hour meter shall be considered 'used.'" Viewing the record in the light most favorable to Liimatta, a reasonable finder of fact could conclude that Bell misrepresented the forwarders as new. Accordingly, summary judgment in Bell's favor is not warranted on Liimatta's fraud claim insofar as the claim is based on the representation that the forwarders he purchased were new. As to the remainder of the seventh alleged misrepresentation, the Court concludes that summary judgment in Bell's favor is appropriate.

*3.     Breach of implied warranties*

Bell asserts that it is entitled to summary judgment on Liimatta's claim for breach of implied warranties because it disclaimed the implied warranties of merchantability and of fitness for a particular purpose. The Distribution Agreement provides in relevant part:

> THE BELL WARRANTY TO BUYER IS EXCLUSIVE AND IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AND THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

The Bell Warranty provides in relevant part:

> THIS WARRANTY IS GIVEN IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WHICH IMPLIED WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED BY BELL.

Bell relies heavily on *Transport Corp. of America, Inc. v. International Business Machines, Inc.*, 30 F.3d 953 (8th Cir. 1994).

In *Transport Corp.*, a purchaser of computer equipment brought suit against the manufacturer and the distributor for breach of implied warranties. *Id*. at 956. The manufacturer argued that the disclaimer of implied warranties in its agreement with the distributor extended to the purchaser. *Id*. at 958. The purchaser argued that it was not bound by the terms of the agreement:

> [The purchaser] next argues that because it was not a party to the negotiations between [the distributor] and [the manufacturer], it is not bound by the terms of the remarketer agreement, including [the manufacturer's] disclaimer of implied warranties. [The purchaser] also argues that any disclaimers of implied warranties are not binding because they were not delivered at the time of the sale.

*Id*. The Eighth Circuit rejected the purchaser's arguments:

> The U.C.C. as adopted in Minnesota has a privity provision that operates to extend all warranties, express or implied, to third parties who may reasonably be expected to use the warranted goods. The seller can disclaim implied

> warranties. Disclaimers of implied warranties are extended to third party purchases by operation of [Minn. Stat.] § 336.2-318.
>
> The remarketer agreement between [the manufacturer] and [the distributor] included a disclaimer of "ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." As the district court correctly noted, this language complies with the requirements of Minn. Stat. Ann. § 336.2-316(2) . . . and thus effectively disclaimed all implied warranties.
>
> Even assuming that [the purchaser] did not receive a copy of the warranty disclaimer, [the purchaser's] claim for breach of implied warranties fails as a matter of law. [The case relied on by the purchaser] is distinguishable from the present case because it did not involve a third party transaction. Thus, operation of Minn. Stat. Ann. §§ 336.2-316, .2-318 extends [the manufacturer's] disclaimer of implied warranties to [the purchaser] as a matter of law.

*Transport Corp.*, 30 F.3d at 958-59 (citations and footnotes omitted).

Liimatta asserts that *Transport Corp.* is factually distinguishable, but the Court discerns no meaningful distinction with respect to disclaimer of implied warranties. The language interpreted in *Transport Corp.* is similar to Bell's disclaimer of implied warranties. That Liimatta was not aware of the Distribution Agreement does not allow him to avoid its disclaimer of implied warranties. *See id*. The same conclusion is warranted with respect to Liimatta's assertion that he did not receive a copy of the Bell Warranty. *See id*. Having effectively disclaimed the implied warranties of merchantability and of fitness for a particular purpose, Bell is entitled to summary judgment insofar as Liimatta asserts that Bell breached these warranties. *See id*.

    *4.    Breach of express warranty*

Bell asserts that it is entitled to summary judgment on Liimatta's claim for breach of express warranty because there is no evidence that it breached an express warranty and because

11

the claim is untimely. In response, Liimatta asserts that Bell warranted the forwarders were new, that the forwarders were actually used, and that he timely made the claim.

The Court first considers whether Bell expressly warranted that the forwarders were new. Under Minnesota law, an express warranty may be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or "[a]ny description of the goods which is made part of the basis of the bargain." Minn. Stat. § 336.2-313(1)(a)-(b) (2004). "A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." *Id*. § 336.2-318. In this case, the Purchase Contracts executed by Liimatta and V & H describe the forwarders as new. According to LaCombe, Bell represented the forwarders were new. Although the Bell Warranty expressly provides that it is given in lieu of all other warranties, express or implied, "[w]hen terms of an express warranty and a disclaimer cannot be reconciled, the language of the express warranty prevails." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 917 (Minn. 1990). Viewing the record in the light most favorable to Liimatta, a reasonable finder of fact could conclude that Bell expressly warranted the forwarders were new.

The Court next considers whether Bell breached the warranty. As set forth above, a reasonable finder of fact, viewing the record in the light most favorable to Liimatta, could conclude that the forwarders were used when Bell represented them as new. The Court therefore rejects Bell's argument that there is no evidence of a breach of an express warranty.

Finally, the Court considers whether Liimatta timely asserted his claim. "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less

than one year but may not extend it." Minn. Stat. § 336.2-725(1) (2004). Minnesota defines when a cause of action accrues as follows:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* § 336.2-725(2). Liimatta brought this action within four years of the delivery of the forwarders. Accordingly, the action is timely unless a reduced period of limitation applies.

Relying on the Distribution Agreement, Bell asserts a reduced period of limitation exists in this case. The Distribution Agreement provides in relevant part:

> Any action by a Buyer of a Product for breach of contract, for breach of warranty arising under, or for a cause of action arising out of the sale of Products, whether based on contract, tort (negligence or strict liability) or otherwise, shall be commenced within one year after the cause of action has accrued. Any such cause of action shall be deemed to have accrued at the earlier of (i) the discovery of the defect or breach, or (ii) 6 months after the Buyer has put the aforesaid Product into service.

Bell asserts the reduced period of limitation applies to Liimatta under *Transport Corp.*

As discussed above, *Transport Corp.* held that a disclaimer of implied warranties in an agreement between a manufacturer and a distributor extended to a purchaser. 30 F.3d at 958-59. The case turned on section 336.2-318's extension of warranties to third parties who may be reasonably expected to use the warranted goods. *Id.* The case does not address whether a reduced period of limitation in an agreement between a manufacturer and a distributor applies to a purchaser, like Liimatta, who neither agreed to nor had knowledge of the reduced period. The Court notes that the reduced limitation period does not appear in the Bell warranty. Under these circumstances, the Court declines to conclude that Liimatta's claim for breach of express warranty is untimely.

13

*5.     Consequential damages*

Bell contends that Liimatta's claim for consequential and incidental damages should be dismissed because it expressly excluded them in its warranty. Under Minnesota law, an exclusion of consequential damages is enforceable unless it is unconscionable. Minn. Stat. § 336.2-719(3) (2004). "Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." *Id*. Bell's warranty provides in relevant part:

> ANY AND ALL CLAIMS BY BUYER FOR LOSSES NOT SPECIFICALLY COVERED BY THIS WARRANTY, WHETHER ARISING DIRECTLY, INDIRECTLY OR CONSTITUTING SPECIAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES, ARE HEREBY EXPRESSLY EXCLUDED.

Assuming the enforceability of Bell's exclusion, the Court nevertheless declines to dismiss Liimatta's claim for consequential and incidental damages given that his claim for fraud survives. *See Clements Auto Co. v. Serv. Bur. Corp.*, 444 F.2d 169, 188-89 (8th Cir. 1971); *Hydra-Mac, Inc. v. Onan Corp.*, 430 N.W.2d 846, 852 (Minn. Ct. App. 1988), *aff'd in part and rev'd in part*, 450 N.W.2d 913 (Minn. 1990).

**B.    V & H's motion**

*1.     Fraud*

V & H asserts it is entitled to summary judgment on Liimatta's fraud claim because the alleged misrepresentations identified by Liimatta are not fraudulent. For the reasons set forth above, the first, second, fifth, sixth, and eighth statements identified by Liimatta are not actionable.

Turning to the third alleged misrepresentation, again, it is: "V & H invited [Liimatta] to tour [its] service facility located in Wisconsin, and represented that the V & H employees were trained to promptly and properly service the machines in question, and would promptly and

14

properly service the machines as needed." At his deposition, Liimatta acknowledged that he had toured V & H's service facility. There is no evidence in the record that V & H employees were not trained to service the forwarders. The remainder of the alleged misrepresentation is a statement of future acts or predictions of future events and there no evidence in the record that V & H had no intention to service the forwarders when LaCombe told Liimatta that V & H employees would promptly and properly service the forwarders. Accordingly, the Court concludes that summary judgment in V & H's favor is appropriate on Liimatta's fraud claim insofar as the claim is based on the third alleged misrepresentation.

As to the fourth alleged misrepresentation, again, it contains two parts: (1) that the forwarders were "identical"; and (2) that the forwarders were "1998 models." There is evidence in the record that Bell informed V & H that the forwarders were different models and that LaCombe told Liimatta the forwarders were identical. As to the model years, there is evidence in the record that LaCombe described the forwarders to Liimatta as "1998 models" and that LaCombe did not believe they were manufactured in 1998. As noted above, the record contains evidence that a forwarder's model year is its year of manufacture. Viewing the record in the light most favorable to Liimatta, a reasonable finder of fact could conclude that V & H fraudulently represented the forwarders to Liimatta as identical, 1998 models. The Court therefore denies V & H's motion insofar as V & H asserts it is entitled to summary judgment on this portion of Liimatta's fraud claim.

The seventh alleged misrepresentation is, again, that the forwarders "were essentially brand new, with BAT 2447 having approximately 653 hours of use, and BAT 2553 having approximately 230 hours of use, with all of the hours of use being pre-sale, demonstration hours." As described in the analysis of Liimatta's fraud claim against Bell, there is evidence in

the record that the forwarders were used when V & H described them as new. With regard to the hours of use, Liimatta has not directed the Court to any evidence that indicates V & H misrepresented BAT 2447's hours of use. As set forth in the analysis of Liimatta's fraud claim against Bell, there is evidence in the record that BAT 2553 had 789 hours use in February 1999. Viewing the record in the light most favorable to Liimatta, a reasonable finder of fact could conclude that V & H misrepresented the forwarders as new and BAT 2553's hours of use. The Court therefore denies V & H's motion on Liimatta's fraud claim insofar as the claim depends on these alleged misrepresentations. As to the remainder of the seventh alleged misrepresentation, the Court grants V & H's motion.

*2.    Breach of express warranty*

V & H argues that it is entitled to summary judgment on Liimatta's claim for breach of express warranty because there is no evidence that it breached an express warranty. Liimatta responds that V & H warranted the forwarders were new and that the forwarders were actually used. For the reasons set forth in the analysis of Liimatta's breach of express warranty claim against Bell, a reasonable finder of fact, viewing the record in the light most favorable to Liimatta, could conclude that V & H breached an express warranty that the forwarders were new. Accordingly, the Court denies V & H's motion on this claim.

*3.    Consequential damages*

V & H maintains that Liimatta's claim for consequential and incidental damages should be dismissed because the Purchase Contracts provide that V & H will not be liable for these damages: "THE DEALER SHALL NOT BE LIABLE TO THE BUYER FOR ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, OR INCOME, OR ANY OTHER INCIDENTAL

DAMAGES ARISING OUT OF THE SALE OR USE OF THE PURCHASED VEHICLE."

Again, an exclusion of consequential damages is enforceable unless it is unconscionable. Minn. Stat. § 336.2-719(3). Assuming the enforceability of V& H's exclusion, the Court nevertheless declines to dismiss Liimatta's claim for consequential and incidental damages given that his claim for fraud survives. *See Clements Auto Co.*, 444 F.2d at 188-89 (8th Cir. 1971); *Hydra-Mac, Inc.*, 430 N.W.2d at 852.

### III.   ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Bell's Motion for Summary Judgment [Docket No. 22] is GRANTED IN PART and DENIED IN PART.

2. V & H's Motion for Partial Summary Judgment [Docket No. 26] is GRANTED IN PART and DENIED IN PART.

Dated:  August 30, 2005

s/ Joan N. Ericksen_____
JOAN N. ERICKSEN
United States District Judge
